# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CT-00179-SCT

*LIBERTY MUTUAL INSURANCE COMPANY*

*v.*

*RICHARD SHOEMAKE*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/28/2010 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TARA STRICKLAND CLIFFORD |
| ATTORNEY FOR APPELLEE: | DAVID C. DUNBAR |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE CIRCUIT COURT OF NEWTON COUNTY IS REINSTATED AND AFFIRMED - 05/02/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1. Ultimately, this case concerns the proper procedure by which a workers' compensation insurer may enforce a subrogation claim arising under Mississippi Code Section 71-3-71. Richard Shoemake was injured in Alabama but received workers' compensation benefits from Liberty Mutual Insurance Company under Mississippi law. He brought and settled a third-party action in Alabama state court and reimbursed Liberty Mutual only the amount it was entitled to under Alabama law. Liberty Mutual, which knew

of but did not join or intervene in the Alabama lawsuit, then sued Shoemake in the Circuit Court of Newton County, seeking full reimbursement as allowed under Section 71-3-71. In granting Shoemake summary judgment, the circuit court held that Alabama law applied and further concluded that *res judicata* and Liberty Mutual's failure to intervene in the Alabama action barred Liberty Mutual's claim.

¶2. The Court of Appeals reversed, holding that Mississippi law governed the amount of Liberty Mutual's subrogation claim and that Liberty Mutual was not required to intervene in the Alabama action to become entitled to reimbursement under Mississippi law. Because we find that Mississippi Code Section 71-3-71 requires a workers' compensation insurer to join or intervene in a third-party action to become entitled to reimbursement, we reverse the judgment of the Court of Appeals and affirm the judgment of the circuit court.

### FACTS AND PROCEEDINGS BELOW

¶3. Richard Shoemake is a Mississippi resident who was employed by Simmons Wrecker Service, a Mississippi company. On September 18, 2003, while in the course and scope of his employment with Simmons, Shoemake was injured when a train collided with his truck in Macon County, Alabama. Shoemake filed a workers' compensation claim under Mississippi law and received $132,402.65 in benefits from Simmons's insurance carrier, Liberty Mutual Insurance Company. Shoemake then brought a third-party tort action against the train operator in Alabama state court.

¶4. Liberty Mutual had notice of the action at all relevant times and was periodically advised of the status of the litigation and mediation by Shoemake's Alabama counsel but made no attempt to join in, intervene in, or in any way participate in the Alabama action. The

2

action was settled without trial on June 27, 2007, for $315,000. A final order dismissing the action with prejudice was entered by the Alabama court on January 16, 2008. Out of the settlement funds, Shoemake remitted $82,226.84 to Liberty Mutual on December 12, 2008. Liberty Mutual subsequently sued Shoemake in the Circuit Court of Newton County on April 14, 2009, to recover an additional $50,175.81.

¶5.    Liberty Mutual claimed that, under Mississippi workers' compensation law, it was entitled to recover all $132,402.65 in compensation benefits it had paid to Shoemake, without sharing the costs of collection. Shoemake sought summary judgment, arguing that Alabama's "common funds" doctrine applied to the Alabama tort action, and as such, Liberty Mutual was required to pay 35% of his attorney fees and a proportional share of other collection costs. He claimed that, after these had been deducted, Liberty Mutual was fully reimbursed. Moreover, he argued that the dismissal of the Alabama action with prejudice precluded Liberty Mutual from relitigating the choice-of-law issue and the amount of subrogation it was owed. The circuit court granted summary judgment for Shoemake, finding that Alabama law governed, that Liberty Mutual's claims had been settled by the Alabama action and were barred by *res judicata*, and that Liberty Mutual had waived its right to have its subrogation claim heard by failing to intervene in the Alabama action.

¶6.    Liberty Mutual successfully appealed to the Mississippi Court of Appeals, which held that, under the "significant relationship" test, Mississippi law governed the subrogation claim. ***Liberty Mut. Ins. Co. v. Shoemake***, __So. 3d__, 2012 WL 1925646 (Miss. Ct. App. 2012). Further, it held that Section 71-3-71 did not require Liberty Mutual to intervene in the third-party action to pursue subrogation. We agree that, as between Liberty Mutual and

3

Shoemake, Mississippi law defines and governs Liberty Mutual's subrogation claim. However, because Mississippi Code Section 71-3-71 requires an employer or insurer to intervene in a third-party action in order to become entitled to reimbursement, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

## STANDARD OF REVIEW

¶7.    We review the circuit court's grant or denial of summary judgment under a de novo standard. ***Entergy Miss., Inc. v. Burdette Gin Co.***, 726 So. 2d 1202, 1205 (Miss. 1998). Further, "whether the circuit court had proper jurisdiction to hear a particular matter is a question of law," which also requires a de novo standard of review. ***Id.*** at 1204-05.

## DISCUSSION

¶8.    We begin by noting the anomalous situation in this case. Shoemake's receipt of benefits, his retained right to sue a responsible third party, and Liberty Mutual's subrogation claim all arise out of Mississippi's workers' compensation statute. However, once Shoemake sued in Alabama, the choice-of-law question would have been determined by an Alabama court, had Liberty Mutual chosen to join or intervene in that action. We would not have had any opportunity to determine what law applied, had a separate Mississippi state lawsuit not been filed. We find no fault with the Court of Appeals' choice-of-law analysis as it applies to the Mississippi action. In a Mississippi action, where a Mississippi resident employed by a Mississippi company elects to receive compensation benefits under Mississippi law, regardless of whether the injury occurred in another state, Mississippi's workers' compensation law governs the statutory subrogation rights of an employer or insurer who has paid benefits to that worker.

4

¶9.    However, this case can be decided without reaching a putative conflict-of-law issue. Today's action, which seeks the enforcement of Liberty Mutual's subrogation claim, arose solely under Mississippi law. The procedure by which an employer or insurer who has paid compensation benefits can be reimbursed out of damages paid by a third party is set out in Mississippi Code Section 71-3-71, and the proper interpretation of that provision resolves this dispute. *See* Miss. Code Ann. § 71-3-71 (Rev. 2011). The real question before us then is whether a statutory subrogation claim under Section 71-3-71 may be brought in a separate action after the conclusion of a third-party action in which the insurer had notice but did not join or intervene.

**1.    Does Section 71-3-71 require an employer or insurer to join or intervene to become entitled to reimbursement?**

¶10.    First, we must determine whether Liberty Mutual should have intervened to enforce its subrogation claim. The subrogation rights of an employer or insurer who has paid workers' compensation benefits "do not spring from a contractual agreement . . . , but rather are conferred by Section 71-3-71." ***Federated Mut. Ins. Co. v. McNeal***, 943 So. 2d 658, 661 (Miss. 2006). Because the right to reimbursement "exists by virtue of statute and must rise or fall strictly as a matter of statutory interpretation," we must first look to the plain language of Section 71-3-71 to determine whether Liberty Mutual is entitled to reimbursement without intervention. ***Id.*** (quoting ***Mississippi Food & Fuel Workers' Comp. Trust v. Tackett***, 778 So. 2d 136, 143 (Miss. Ct. App. 2000)).

¶11.    Section 71-3-71 permits an injured worker who receives compensation benefits from his employer or its insurer to pursue an action against a third party and gives the employer

5

or insurer the right to either join or intervene in such an action. In turn, the statute allows the employer or insurer to be fully reimbursed for all compensation paid out of the worker's net recovery. However, the language of Section 71-3-71 clearly conditions the employer or insurer's right to reimbursement upon the employer or insurer's joinder or intervention in the third-party action:

> The acceptance of compensation benefits from or the making of a claim for compensation against an employer . . . shall not affect the right of the employee or his dependents to sue any other party at law for such injury or death, but the employer or his insurer shall be entitled to reasonable notice and opportunity to join in any such action or may intervene therein. *If such employer or insurer join in such action*, they shall be entitled to repayment of the amount paid by them as compensation and medical expenses from the net proceeds of such action (after deducting the reasonable costs of collection) *as hereinafter provided*.

Miss. Code Ann. § 71-3-71 (Rev. 2011) (emphasis added). The phrase "if such employer or insurer join" means that the employer or insurer is entitled to repayment under the statute only if it first joins or intervenes in the action.[1] Further, where the following paragraph states that the employee's net recovery "shall be used to discharge the legal liability of the employer or insurer," it is simply elaborating on the earlier phrase "as hereinafter provided"

---

[1] The phrase "if such employer or insurer join in such action"can be fairly read to mean "join *or intervene* in such action." The preceding sentence unambiguously gives an employer or insurer the right either to join *or* intervene in the third-party suit. The Legislature's choice of the word "join" to describe the employer or carrier's participation in the suit should not be construed strictly as meaning that joinder alone, and not intervention as well, is the only means by which an employer or carrier may become entitled to reimbursement. We recognize that joinder and intervention are distinct concepts governed by different procedural rules, although for our purposes they may be used interchangeably in the cases discussed below. However, the plain language of Section 71-3-71 – which pre-dates the adoption of our rules of civil procedure – allows either joinder or intervention, and we affirm that either will suffice to protect an insurer's or employer's right to reimbursement.

and applies only where the employer or insurer joins or intervenes in the action. Miss. Code Ann. § 71-3-71 (Rev. 2011).

¶12. In spite of the clear language of Section 71-3-71, Liberty Mutual argues that this Court has never required a workers' compensation insurer to intervene in a third-party action to enforce its statutory right of reimbursement. Following language in *Federated Mutual Insurance Company v. McNeal*, 943 So. 2d 658 (Miss. 2006), the Court of Appeals drew the same conclusion. Importantly, the *McNeal* Court did not have before it the question of whether intervention was a prerequisite to subrogation. Moreover, neither the cases cited by *McNeal* nor Liberty Mutual support Liberty Mutual's claim.

¶13. As in this case, *McNeal* involved an injured employee who settled a third-party action after receiving compensation benefits. *Id.* at 659. The insurer in that case, Federated Mutual, failed to intervene formally according to Rule 24 of the Mississippi Rules of Civil Procedure. *Id.* at 659, 662. Instead, after the case was settled, but before the settlement funds were disbursed, Federated filed a motion to compel reimbursement of all compensation paid under Section 71-3-71. *Id.* at 659. Federated appealed the denial of that motion to this Court. *Id.* at 660. The *McNeal* Court then made the following statement which Liberty Mutual and the Court of Appeals now seize upon:

> Federated pointed out in oral argument that our case law has not required a workers' compensation insurer to intervene or join in an employee's third-party suit in order to assert its statutory lien. Indeed, Federated is correct, as this Court has never required the insurance carrier to join or intervene in an employee's third-party litigation to validate or enforce its subrogated claim to the proceeds recovered in that litigation. *See, e.g.*, *Sneed v. Verdun*, 611 So. 2d 947, 948 (Miss. 1992); *Kidwell v. Gulf, Mobile & Ohio R.R.*, 251 Miss. 152, 168 So. 2d 735, 736 (1964).

7

***McNeal****, 943 So. 2d at 662.

¶14.    However, the issue ***McNeal*** resolved was "not whether Federated is entitled to subrogation without intervention, but rather whether Federated may appeal the circuit court's decision without intervention." ***Id.*** We went on to find that "the circuit court and all parties to the litigation accepted Federated as having intervened in the proceedings," and that "[a]lthough the formal procedural requirements of Rule 24 were not met, no objection was raised to either Federated's participation in the trial court or its pursuit of this appeal." ***Id.*** at 663. Finally, in spite of our lenient application of Rule 24, "we stress[ed] that the better practice for insurers who anticipate the possible need for judicial assistance in enforcing their liens is to file a formal intervention in accordance with the provisions of Rule 24 of the Mississippi Rules of Civil Procedure."***Id.***

¶15.    Because the ***McNeal*** Court accepted Federated's misnomed claim in the third-party action, it did not determine whether intervention is a prerequisite to subrogation. As such, the ***McNeal*** decision itself is an inadequate basis for a rule that subrogation does not require intervention. While ***McNeal*** cited ***Sneed v. Verdun***, 611 So. 2d 947, 948 (Miss. 1992), and ***Kidwell v. Gulf, Mobile & Ohio Railroad Co.,*** 251 Miss. 152, 168 So. 2d 735(1964), neither case supports a conclusion that Section 71-3-71 and our prior decisions do not require an employer or insurer to join or intervene to become entitled to reimbursement.

¶16.    In ***Sneed***, the circuit court approved a settlement between the injured worker and third party, but retained jurisdiction to allow the employer notice and the opportunity to intervene before final disbursement of the funds. ***Sneed,*** 611 So. 2d at 947-48.  The employer did in fact intervene, and we affirmed the circuit court's decision that intervention at that point was

8

timely. *Id.* at 948. We did not, however, state that intervention was unnecessary. Indeed, the allowance of an eleventh-hour intervention suggests that intervention was necessary for the employer to be reimbursed.

¶17.  In *Kidwell*, the insurer intervened in the employee's third-party action prior to trial. *Kidwell*, 168 So. 2d at 736. The issue we decided was whether the insurer was entitled to have its attorney fees incurred in the intervention reimbursed out of the employee's recovery. *Id.* at 736. We emphasized that intervention "assured the intervenor, by statute, his right of reimbursement for monies expended as compensation and medical expenses or of the discharge of his legal liability therefor in the event judgment was obtained." *Id.* As such, the insurer had a choice either to pursue reimbursement and bear the costs of intervention, or forgo reimbursement altogether by not intervening:

> The intervention is not required by law, but is optional on the part of the carrier. It could intervene if the prospective judgment appeared great enough to reimburse it for monies expended in accordance with section 6998-36 [now Section 71-3-71], or it might decline to do so as discretion might dictate. The choice of intervention is that of the carrier and is not mandatory.

*Id.* Rather than holding that intervention is not required for reimbursement, *Kidwell* supports our interpretation of Section 71-3-71 that an employer or insurer forgoes reimbursement if it exercises its discretion not to intervene.

¶18.  Also at issue in *McNeal* was whether an employer or insurer was entitled to reimbursement if the injured employee was not "made whole" by the third-party recovery. *McNeal*, 943 So. 2d at 659-60. We reiterated that Section 71-3-71 "unambiguously provides that, after deducting the costs of collection and attorney's fees, any recovery from a third party . . . must be applied first to repay the workers' compensation insurer" and thus, the

9

"made-whole" doctrine did not apply to the statute. *Id.* at 660. Again, the cases *McNeal* cites do not suggest that reimbursement is mandated where the employer or carrier does not intervene.[2] Because the Court of Appeals used this language to support its holding that intervention is unnecessary, we simply point out that the statute also unambiguously provides that an employer or insurer must first join or intervene to be entitled to reimbursement. Only after joinder or intervention does the statute mandate that an employer or insurer who has paid compensation benefits must be reimbursed from any third-party recovery.

¶19.    In addition to the cases cited in *McNeal*, Liberty Mutual relies on *Powe v. Jackson*, 236 Miss. 11, 109 So. 2d 546 (1959). In *Powe*, an injured worker settled his third-party claims before filing suit and without the approval of the Workers' Compensation Commission. *Id.* at 550. While the employer knew of the settlement negotiations, there was no action in which it could have joined or intervened. *Id.* at 549-550. We held only that the employer did not waive its right to reimbursement by not intervening in a settlement  that took place before an action was ever filed and that was not approved by the Commission. *Id.* at 550. We explained that Commission approval of a settlement without suit serves "to preserve the subrogation and indemnity rights of the employer or insurer." *Id.* Because the

_____

[2] *See* **Miss. Power Co. v. Jones**, 369 So. 2d 1381, 1387-88 (Miss. 1979) (holding that insurer could be reimbursed only out of punitive damages recovered by employee); **Litton Sys., Inc. v. Murphree**, 301 So. 2d 850, 852-53 (Miss. 1974) (holding that it was error for the trial court to deny intervention and also that Section 71-3-71 unambiguously allows for reimbursement from wrongful-death beneficiaries); **Merchants Co. v. Hutchinson**, 199 So. 2d 813, 820 (Miss. 1967) (holding that, because workers' compensation statute was unambiguous, it was unnecessary and erroneous to allow intervening insurer to introduce prejudicial evidence related to its subrogation claim).

unapproved settlement prevented the insurer from having the opportunity to join, we held that the settlement was invalid and void. *Id.*

¶20.    Liberty Mutual also cites *McCluskey v. Thompson*, in which the employer and its insurer who were wrongly named as defendants in the third-party action sought dismissal "without prejudice to their rights to later intervene as plaintiffs under section 71-3-71 . . . ." *McCluskey*, 363 So. 2d 256, 257-58 (Miss. 1978). However, the trial court erroneously ordered that they join in the action within thirty days or have their subrogation claim barred. *Id.* at 258. We simply reiterated that intervention is optional and that the statute does not require intervention within a specified time period. *Id.* at 265. We did not decide, however, that an employer can still be reimbursed if it exercises its option not to intervene.

¶21.    To the contrary, we have on multiple occasions construed Section 71-3-71 according to its plain language and paraphrased it as requiring intervention before an insurer may be reimbursed. In *Index Drilling Co. v. Williams*, we explained that an employee may recover damages from a third-party tortfeasor even if he or she first accepts compensation benefits, and that *"if the employer or insurer join in such action*, they are entitled to be reimbursed for compensation benefits paid by them from the net proceeds of the suit." *Williams*, 242 Miss. 775, 784, 137 So. 2d 525, 528 (1962) (emphasis added). In *Richardson v. United States Fidelity & Guaranty Co.,* we described the distribution scheme contained in the second paragraph of Section 71-3-71 as being dependent upon the employer's or insurer's intervention in the suit:

> [W]hen a compensation beneficiary brings an action for his injuries against a third-party wrongdoer, *and if such employer or insurer join in such action*, the net proceeds of such action shall be applied as follows: (1) "The reasonable

11

cost of collection," and (2) "the remainder, or so much thereof as is necessary, shall be used to discharge the legal liability of the employer or insurer," and (3) "any excess shall belong to the injured employee or his dependents."

*Richardson*, 233 Miss. 375, 381, 102 So. 2d 368, 370 (1958) (emphasis added).

¶22. Finally, in *Merchants Co. v. Hutchinson,* we clearly stated that the right of reimbursement is premised upon a single requirement:

> *All that was necessary* for the intervenor to do was to let the court know how much had been expended by the insurance carrier, either by a petition to intervene or by a petition to join in the cause of action; *thenceforth*, Mississippi Law mandatorily provided for the distribution of any verdict rendered.

199 So. 2d 813, 820 (Miss. 1967) (emphasis added). Other cases indicate that an employer or insurer who is denied intervention will be unable to enforce its statutory right of subrogation. *See Miss. Ins. Guar. Ass'n v. Brewer*, 922 So. 2d 807, 813 (Miss. Ct. App. 2005) (holding that denial of a motion to intervene infringed on employer and insurer's "statutory right of subrogation for monies paid to" claimant); *Miss. Food & Fuel Workers' Comp. Trust v. Tackett*, 778 So. 2d 136, 142-43 (Miss. Ct. App. 2000) (explaining that intervention is the procedural means by which the subrogation right is protected). *See also McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1072, 1074 (5th Cir. 1970) (allowing post-judgment intervention because insurer "sought to intervene for the limited purpose of protecting its subrogation interest in a fund which had not yet been distributed" and stating that "denial of the motion to intervene [would] harm [the insurer] by frustrating its efforts to satisfy its subrogation interest").

¶23. In addition to the plain language of Section 71-3-71, the overwhelming weight of our caselaw supports our conclusion that Liberty Mutual was required to join or intervene in

Shoemake's Alabama action to enforce its statutory subrogation claim. We note that nothing prohibits an employer or insurer from entering a contractual subrogation agreement with the employee whereby joinder or intervention would be unnecessary. However, we emphasize that an employer or insurer cannot simply sit out a third-party action by the employee and later, after judgment has been entered and all funds dispersed, sue to enforce its statutory subrogation claim.[3]

## 2. The circuit court was not the proper forum for Liberty Mutual's subrogation claim.

¶24. Finally, we stress that the present Mississippi state-court action is contrary to the intent of Section 71-3-71 and should have been dismissed for lack of jurisdiction even if Liberty Mutual had intervened in the Alabama action. Section 71-3-71 effectively funnels all claims of the employer, insurer, or employee against a third party into one action, thereby preventing the need for multiple lawsuits, as have taken place in this case. As discussed above, if an employer or insurer does not join or intervene in an employee's third-party action, its subrogation claim is waived. As an alternative to the injured worker bringing suit, Section 71-3-71 allows an employer or insurer who has paid compensation benefits to sue the third party directly. Miss. Code Ann. § 71-3-71 (Rev. 2011). However, if the employer or insurer gives the employee notice and an opportunity to be represented in the action, "all

---

[3] Our cases liberally have allowed intervention at any point before the final distribution of funds to prevent a double recovery for the injured worker and ensure that an employer or insurer who has paid compensation will be fully reimbursed. *See* ***Sneed v. Verdun***, 611 So. 2d 947, 948 (Miss. 1992); ***Miss. Food & Fuel Workers' Comp. Trust v. Tackett***, 778 So. 2d 136, 142 (Miss. Ct. App. 2000). *See also* ***McDonald v. E.J. Lavino Co.***, 430 F.2d 1065, 1074 (5th Cir. 1970).

claims of such compensation beneficiary shall be determined in such action, as well as the claim of the employer or insurer." Miss. Code Ann. § 71-3-71 (Rev. 2011). The goal of the statutory scheme is for all parties who are entitled to recovery in the third-party action and who have been given notice to have their claims settled in one action, whether the employee, the employer, or the insurer brings the suit.[4]

¶25.    We affirmed this policy in *Owen & Galloway v. Travelers Insurance Co.*, 499 So. 2d 776 (Miss. 1986). In that case, the attorneys for the employee – who prevailed in his third-party action in federal court and made reimbursement under Section 71-3-71 – filed a separate action in chancery court against the intervening insurer, seeking an equitable division of the attorney fees and costs from the first action. *Id.* at 777-78. We looked to language in Section 71-3-71 providing that collection costs (which include attorney fees) are to be "approved and allowed by the court in which such action is pending," and reasoned that "[w]hen a judgment is rendered in a third party suit and all interested parties are properly before the court, the rights of all parties are determined by the court." *Id.* at 778 (quoting Vardaman S. Dunn, *Mississippi Workmen's Compensation*, § 235 (3d ed. 1982)). Because we found "the intention of the Legislature eminently clear that the court in which the action was pending is the proper forum for issues concerning the distribution of settlement

---

[4] The only scenario under which the statute might permit multiple suits is where the party bringing suit has failed to give to the other party the statutorily required notice and opportunity to join. This situation is not before us in this case, however, and does not change the underlying objective of the statute for all claims to be heard together expeditiously and resolved in a single action.

proceeds," we held that the chancery court lacked jurisdiction over the second action. *Id.* at 779.

¶26. Procedurally, Liberty Mutual should have intervened in the Alabama action and then tried to persuade the Alabama court to apply Mississippi law to its subrogation claim. This would have been a difficult burden, as Alabama consistently has applied the *lex loci delicti* rule in third-party tort claims brought by an out-of-state worker who had availed himself of another state's workers' compensation statute. *Ne. Utils., Inc. v. Pittman Trucking Co.*, 595 So. 2d 1351, 1353 (Ala. 1992); *Powell v. Sappington*, 495 So. 2d 569, 570 (Ala. 1986). Regardless, Liberty Mutual waived its right seek to have Mississippi law applied to its claim by choosing not to join or intervene in the Alabama action. It cannot now, having failed to follow the procedure set out in Section 71-3-71, enforce in a second lawsuit a subrogation claim which arose only under that section.

**CONCLUSION**

¶27. Liberty Mutual waived its right to judicial enforcement of its statutory subrogation claim by failing to join or intervene in the Alabama action. This opinion should not be construed as a retreat from our longstanding policy that an injured worker should not receive a double recovery under our workers' compensation statute. *See Sawyer v. Dependents of Head*, 510 So. 2d 472, 477-78 (Miss. 1987). Instead, because Liberty Mutual slept on its rights while Shoemake's third-party action was adjudicated in Alabama, it forewent its rights. Accordingly, Liberty Mutual is not entitled to recover additional funds from

Shoemake. We reverse the Court of Appeals' judgment and reinstate and affirm the judgment of the Circuit Court.

¶28.    **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE CIRCUIT COURT OF NEWTON COUNTY IS REINSTATED AND AFFIRMED.**

**WALLER, CJ., RANDOLPH, P.J., KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR.  LAMAR, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. DICKINSON, P.J., NOT PARTICIPATING.**